******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

CHRISTOPHER AMBROSE *v.* KAREN AMBROSE
(AC 45424)

Bright, C. J., and Alvord and DiPentima, Js.

*Syllabus*

The plaintiff in error, C, the former attorney for the defendant in the underlying dissolution action, filed a writ of error challenging the order of the first defendant in error, M, a Superior Court judge, disbarring her from the practice of law. C had filed a motion to disqualify the second defendant in error, A, a Superior Court judge, from the underlying action on the ground of bias, and a hearing was held on the motion to disqualify. At the hearing, M asked C to indicate specific parts of the transcripts of the dissolution proceedings that explained her claims of bias. C stated that the record in its totality would show that A was biased against women who claim abuse, individuals with disabilities, and anyone not of the Jewish faith. In support of these claims, C provided only examples of A's rulings adverse to her client. M denied the motion to disqualify, reasoning that the claims of bias were unsupported and frivolous and finding that C had blatantly lied and made utterly empty claims. M further stated in his disqualification ruling that a hearing would be held on whether to act against C, and, if action was warranted, what action to take. At the disciplinary hearing, C made certain disparaging remarks against M. Subsequently, M issued a memorandum of decision disbarring C from the practice of law on the basis that she violated various Rules of Professional Conduct. *Held*:

1. C could not prevail on her claim that M violated her constitutional right to due process regarding the disciplinary hearing by failing to give her adequate notice and by limiting the hearing to the issue of sanctions: although M's procedure was unusual in that he made findings as to C's conduct in his ruling on the motion to disqualify A and then ordered a separate hearing on whether he should take action against C based on those findings, the disqualification ruling, which contained the notice for the disciplinary hearing, clearly stated that the disciplinary hearing would address the findings made in the disqualification ruling and adequately notified C of the parameters of the hearing, and it was sufficiently clear that the hearing was limited to the issue of whether the court would act, and, if so, what action to take against C for her conduct during the hearing on the motion to disqualify, leaving open the possibility, however slight, that, following the disciplinary hearing, C would be found not to have violated the Rules of Professional Conduct; moreover, M did not unfairly limit the disciplinary hearing to the imposition of sanctions, C was provided with the opportunity to be heard prior to her disbarment, the transcripts having clearly shown that C had a meaningful opportunity to be heard at both hearings and to explain her claims of bias, and, although C was not under oath at either hearing, as an officer of the court, she had an obligation to tell the truth and to not make frivolous claims; furthermore, although M reminded C at the start of the disciplinary hearing that the purpose of that hearing was to give her a chance to be heard on the issue of whether he should act upon the findings he had made as to her conduct at the disqualification hearing, he allowed her the opportunity to challenge those findings and to explain why there was a good faith basis for her conduct before determining that she had violated several of the Rules of Professional Conduct.

2. C could not prevail on her claim that the sanction of disbarment for her conduct in connection with the motion to disqualify constituted impermissible punishment for her exercise of her first amendment right to free speech; C was afforded a sufficient opportunity to be heard and she directed this court to no law, nor was this court aware of any, providing either that she was entitled to additional process because her misconduct involved speech or that a different standard for the imposition of sanctions for attorney misconduct should apply when the misconduct involved speech.

3. C could not prevail on her claim that M's findings that she had violated the Rules of Professional Conduct were not factually supported by

clear and convincing evidence, the record having contained sufficient evidence to support the decision under the requisite standard of proof: M's findings that C's allegations made in connection with the motion to disqualify were frivolous and intentionally inaccurate were supported by clear and convincing evidence, the transcript of the hearing on the motion to disqualify having shown that M admonished C not to say things for which she could not provide support and gave her opportunities to withdraw or temper her statements; moreover, instances cited in the disciplinary order, and apparent in the court file, provided clear and convincing evidence that C had failed to make reasonable efforts to expedite litigation consistent with the interests of her own client, and M also found that C's arguments in furtherance of her allegations of judicial bias had the corrupt motive to cloud the truth for the perceived benefit of her client and that she acted with reckless disregard for the truth; furthermore, the transcript from the hearing on the motion to disqualify supported the findings that C disrupted proceedings and prejudiced the system of justice by hurling baseless accusations, harassing parties, and using the system of justice to punish a party opponent and legal professionals.

4. C could not prevail on her claim that disbarment was an excessive penalty because it was disproportionate in light of the conduct involved and her lack of disciplinary history; M's sanction of disbarment was not an abuse of his discretion, as C did not demonstrate that M acted arbitrarily in imposing the penalty of disbarment, but, rather, the disciplinary order demonstrated a careful consideration of the nature of the misconduct in light of aggravating and mitigating circumstances, and this court deferred to M's determination of the appropriate sanction.

Argued September 19, 2023—officially released February 6, 2024

*Procedural History*

Writ of error from an order of the Superior Court in the judicial district of Fairfield, Regional Family Trial Docket, *Moukawsher, J.*, disbarring the plaintiff in error from the practice of law, brought to this court. *Affirmed.*

*Nickola J. Cunha*, self-represented, the appellant, with whom, on the brief, were *Norman A. Pattis* and *Christopher T. DeMatteo* (plaintiff in error).

*Robert J. Deichert*, assistant attorney general, with whom, on the brief, was *William Tong*, attorney general, for the appellees (defendants in error).

*Opinion*

DiPENTIMA, J. The primary issue in this writ of error challenging the disbarment of an attorney is whether her due process rights were violated by the procedure used by the first defendant in error, Hon. Thomas G. Moukawsher. The plaintiff in error, Nickola J. Cunha, who is the former attorney for a party in the underlying dissolution action, challenges in this writ of error the order of Judge Moukawsher disbarring her from the practice of law. Cunha claims that Judge Moukawsher (1) violated her constitutional right to due process by failing to give her adequate notice of a disciplinary hearing and by deciding that misconduct had occurred without an independent hearing on the issue, (2) violated her first amendment right to free speech by disbarring her for the arguments she made in connection with a motion to disqualify, (3) erred in finding that she had violated the Rules of Professional Conduct because those findings were not factually supported by clear and convincing evidence and (4) imposed an excessive penalty by disbarring her from the practice of law.[1] We conclude that no constitutional violation occurred, the findings of violations of Rules of Professional Conduct were supported by clear and convincing evidence and there was no abuse of discretion in ordering Cunha disbarred. Accordingly, we affirm the judgment of the trial court.

The record discloses the following relevant facts and procedural history. In 2019, the plaintiff, Christopher Ambrose, commenced a dissolution action against the defendant, Karen Ambrose, who was represented by Cunha. Trial in the dissolution action began in March, 2021. As explained by the second defendant in error, Hon. Gerard I. Adelman, judge trial referee, in the April 26, 2022 memorandum of decision dissolving the marriage and explaining the delay in doing so, "the defendant began to simply not appear for the trial and [Cunha] began to make derogatory comments about the court and its proceedings. Accordingly, the court referred the complaints to the Regional Family Trial Docket's presiding judge, [*Moukawsher, J.*], for a hearing."

At a November 22, 2021 hearing concerning the referred matters, Judge Moukawsher noted that there was no pending motion to disqualify to decide. After the defendant, through Cunha, filed a motion to disqualify Judge Adelman from the proceedings on the ground of bias, on December 1, 2021, a hearing was held on the motion to disqualify. At that hearing, Judge Moukawsher asked Cunha to indicate specific parts of the transcripts of the dissolution proceedings that explained her claims of bias. Cunha stated that the record in its totality would show that Judge Adelman was biased against women who claim abuse, individuals with disabilities, and anyone not of the Jewish faith. In support of these claims, she provided only examples of Judge Adelman's rulings

adverse to her client. Judge Moukawsher repeatedly requested that Cunha provide evidence to support her claims of bias rather than simply relying on the issuance of adverse rulings and stated at one point, "You're a lawyer. You know I need to have evidence. You can't just assert things." Judge Moukawsher further stated at one point that, "it can't be just simply you don't like his rulings . . . ."

In a December 10, 2021 memorandum of decision (disqualification ruling), Judge Moukawsher denied the motion to disqualify, reasoning that the claims of bias were unsupported and noted that the motion was "entirely unsupported and frivolous. No reasonable person would question [Judge Adelman's] impartiality under these circumstances." Judge Moukawsher found that Cunha had "blatantly lied" and made "utterly empty claims." Judge Moukawsher stated that, "[b]ased upon what has occurred on the record in connection with the latest motion to disqualify Judge Adelman, on January 10, 2022, at 10 a.m. the court will hold a hearing on whether to act against Attorney Cunha, and, if action is warranted, what action to take." Judge Moukawsher noted that the matter was of "the utmost seriousness" and advised Cunha to be represented by counsel at the hearing. Judge Moukawsher further stated that "[t]he clerk will send a copy of this ruling to the chief disciplinary counsel. The court would welcome participation by any appropriate disciplinary entity to appear as a friend of the court for the upcoming hearing."

At the start of the January 10, 2022 disciplinary hearing, Judge Moukawsher, stated: "As the record will reflect, the court denied the motion to disqualify Judge Adelman and made conclusions that Attorney Cunha had substantially misrepresented on matters of fact to the court. And so the conclusions, in terms of Attorney Cunha, what she said and did have already been made. And the purpose of this is to consider potential discipline for Attorney Cunha with respect to what the court has already concluded." In response, Cunha, representing herself, stated that Judge Moukawsher's findings in the disqualification ruling regarding her conduct were clearly erroneous and noted that she found "these proceedings to be intentionally harassing and intimidation and an attempt by Your Honor solely to shut me down for the corruption that I have raised before this court." Cunha further stated that the disqualification ruling "is a joke, and it is pathetic, and you should be ashamed of yourself for subjecting myself to that type of rhetoric. Frankly, Judge, I am ashamed to even be sitting before you with the type of conduct that you engaged in. You have engaged in material misrepresentation; you have lied to the public. You have done so solely to put me in a poor light . . . ." Judge Moukawsher reminded Cunha that "what I am dealing with today are the misstatements and false claims that you made before me" and that he was giving her "the opportunity before I

determine what action should be taken against you to tell me any reasons in support of why I shouldn't take any action to you, or against you, or that I should take some lesser action against you. And I was going to suggest that you might tell me some of your professional background, that might be a basis for it, that you might describe why you, in good faith, believed the things that you asserted. You could name the documents you examined, you could name the people you spoke with, you could explain the reliability of these things." Cunha argued that Judge Moukawsher's findings in the disqualification ruling were clearly erroneous and questioned whether she would be allowed to engage in cross-examination of him as to those findings. Judge Moukawsher stated, "I am trying to give you a chance to be heard on what I have ordered. I have concluded, already from the record, from what you said to me in court, that you misrepresented to me material matters," and further explained that "[t]he question is what I'm going to do about it. I'm going to give you one more chance to address the various penalties I might impose before I'm concluding that you're not going to respond to your opportunity to be heard." Cunha stated that Judge Moukawsher "should disqualify [himself] because [he] could not be the accuser, the trier of fact, the finder and the executioner," and suggested that Judge Moukawsher was "prejudiced in what it is that you have opined in this matter." Counsel for the plaintiff in the dissolution proceedings was given a chance to be heard over Cunha's objection. When Judge Moukawsher gave the disciplinary counsel an opportunity to be heard, Cunha objected, stating that he "seems to think nothing of to allow an attorney to speak on the record absent an appearance. We have due process in this country. What is so difficult for this court to comprehend? You are not the law maker." The court instructed Cunha to "stop," and Cunha responded, "I am frustrated, Judge, with your lack of acknowledgement of what your position is as a judge. You are not the legislature. There is something called the separations of power." Judge Moukawsher asked Cunha to "stop speaking," at which point Cunha stated, "I will obey, Your Honor, would you like me to bow"; Judge Moukawsher responded that Cunha was "bounding criminal contempt of court" because she was "abusing the court" and "not providing any useful information." The disciplinary counsel addressed Judge Moukawsher, listing in detail the rule violations and misconduct the evidence supported for a sanction of disbarment. Following that, Cunha stated that she never made a material misrepresentation to Judge Moukawsher and attempted to provide support for the claims of bias raised in the motion to disqualify. She urged Judge Moukawsher "to reconsider the findings" and reasoned that "they were entered by mistake." She further asked Judge Moukawsher "again to please reconsider" and listen to testimony of "March 31, 2021, April 1st, May 25th and 27th, June 2nd and 3rd, July 20th

and, as Your Honor knows, October 20th and November 9th, all in 2021. I believe that those dates support, without a doubt, the claims that I've made and should be listened to before Your Honor were to consider anything else. I believe Your Honor, unfortunately, was put in a predicament, like myself, and you acted on responses that I gave in a theoretical broad scope, which I understand why you would, and I did retract that day and I believe you need to take that into consideration because it's very important. Because I acknowledge on that day that these proceedings needed to be reined back in and I needed to accept responsibility that I allowed them to go awry and it wasn't okay and I needed to refocus the court's attention, which is exactly what I did. So, I ask the court to please consider that." The court responded, "I will consider everything you just said, I've written it down carefully and I can assure you that I am no happier about being in this position than anybody else is too. It's a very unfortunate position for all of us to have to deal with."

On January 25, 2022, Judge Moukawsher issued a memorandum of decision disbarring Cunha from the practice of law on the basis that she violated rules 3.1, 3.2, 3.3, 3.5, 8.2, 8.4 (3) and 8.4 (4) of the Rules of Professional Conduct (disciplinary order). In so doing, Judge Moukawsher stated that "[d]isbarment is the appropriate penalty for conduct as egregious as Ms. Cunha's" and noted that her conduct "not only involved a fraud on the court, but a scurrilous assault on the integrity of a judge. The offense was aggravated by its context and by Ms. Cunha's behavior at the hearing on potential punishment" wherein "she mocked and disregarded the court's authority. She will not be given a chance to do it again." Judge Moukawsher ordered Cunha permanently disbarred unless reinstated. Cunha, through counsel, filed a writ of error from the January 25, 2022 disciplinary order barring her from the practice of law.[2] Additional facts will be set forth as necessary.

I

Cunha first claims that Judge Moukawsher violated her constitutional right to due process regarding the January 10, 2022 disciplinary hearing by (a) failing to give her adequate notice and (b) limiting it to the issue of sanctions.[3] Although we acknowledge that Judge Moukawsher's procedure was unusual in that he made findings as to Cunha's conduct in his ruling on the motion to disqualify Judge Adelman and then ordered a separate hearing on whether he should take action against Cunha based on those findings, we conclude that under the circumstances in the present case this procedure did not violate Cunha's due process rights.

"Because a license to practice law is a vested property interest and disciplinary proceedings are 'adversary proceedings of a quasi-criminal nature,' an attorney subject to discipline is entitled to due process of law. . . .

Due process is inherently fact-bound because due process is flexible and calls for such procedural protections as the particular situation demands. . . . The constitutional requirement of procedural due process thus invokes a balancing process that cannot take place in a factual vacuum. . . . Accordingly, [t]he determination of the particular process that is due depends on the nature of the proceeding and the interests at stake. . . . In attorney disciplinary proceedings, two interests are of paramount importance. On the one hand, we must not tie the hands of . . . trial courts with procedural requirements so strict that it becomes virtually impossible to discipline an attorney for any but the most obvious, egregious and public misconduct. On the other hand, we must ensure that attorneys subject to disciplinary action are afforded the full measure of procedural due process required under the constitution so that we do not unjustly deprive them of their reputation and livelihood." (Citations omitted; internal quotation marks omitted.) *Burton* v. *Mottolese*, 267 Conn. 1, 19–20, 835 A.2d 998 (2003), cert. denied, 541 U.S. 1073, 124 S. Ct. 2422, 158 L. Ed. 2d 983 (2004). "At [its] core, the due process [clause] of the . . . federal [constitution] require[s] that one subject to a significant deprivation of liberty or property must be accorded adequate notice and a meaningful opportunity to be heard. . . . As a procedural matter, before imposing . . . sanctions, the court must afford . . . a proper hearing on the . . . [proposed] sanctions. . . . There must be fair notice and an opportunity for a hearing on the record. . . . [B]efore [discipline may be imposed], [an] attorney [is] entitled to notice of charges, fair hearing and [an] appeal to court for [a] determination of whether [s]he was deprived of due process . . . . These requirements apply to the imposition of sanctions." (Citations omitted; internal quotation marks omitted.) *Briggs* v. *McWeeny*, 260 Conn. 296, 318, 796 A.2d 516 (2002). The question of whether Cunha was deprived of her due process rights is a question of law subject to our plenary review. See *Mikucka* v. *St. Lucian's Residence, Inc.*, 183 Conn. App. 147, 160–61, 191 A.3d 1083 (2018).

A

Cunha first argues that the notice of the disqualification hearing violated her right to due process because it failed to notify her adequately of the misconduct for which she would be disciplined and that the disciplinary hearing was limited to the issue of sanctions. Cunha misreads the record. The notice clearly stated that the hearing would address the findings made in the disqualification ruling and adequately notified Cunha of the parameters of the hearing.

In the disqualification ruling, which contained the notice for the disciplinary hearing, Judge Moukawsher found that Cunha had lied and made baseless allegations against Judge Adelman; he made no conclusions

that she had violated any specific Rules of Professional Conduct.[4] Rather, following the sections of the disqualification ruling concerning the denial of the motion to disqualify, there was a section entitled in bold letters: "The court will hold a hearing to consider whether to discipline Attorney Cunha." Below that title, Judge Moukawsher rhetorically queried, "[c]an a court stand idly by when it realizes a lawyer has blatantly lied to it, when the lawyer has made astounding and utterly empty claims against a judge based upon his race, and unsupported claims about his alleged biases against the disabled and women who allege abuse," and then, citing Practice Book § 2-45, stated that "[t]he rules say the court can't turn a blind eye to this. Indeed, for matters relating to courtroom conduct, judges have primary jurisdiction over lawyers who do not meet their obligations as officers of the court." He then stated that, "[b]ased upon what has occurred on the record in connection with the latest motion to disqualify Judge Adelman, on January 10, 2022, at 10 a.m., the court will hold a hearing on whether to act against Attorney Cunha, and, if action is warranted, what action to take. Attorney Cunha should have no illusions. The matter is of the utmost seriousness. She would be well advised to be represented at the hearing by an attorney." Accordingly, the disqualification ruling was sufficiently clear that the January 10, 2022 hearing was limited to the issue of whether the court would "act," and if so, what action to take against Cunha for her conduct during the hearing on the motion to disqualify, leaving open the possibility, however slight, that following the disciplinary hearing Cunha would be found not to have violated the Rules of Professional Conduct.[5]

## B

Cunha's second due process argument is that Judge Moukawsher unfairly limited the January 10, 2022 hearing to the issue of what, if any, sanction to impose and precluded her from challenging the findings of the disqualification ruling. After a review of the transcript from that hearing, we conclude that the court did not limit unfairly the January 10, 2022 disciplinary hearing to the imposition of sanctions.

In its disqualification ruling, Judge Moukawsher found that Cunha had "made astounding and utterly empty claims against a judge based upon his race, and unsupported claims about his alleged biases against the disabled and women who allege abuse" and had "lied to a judge emphatically, repeatedly, and with ample warning that the judge would check for the truth." A court has inherent authority pursuant to Practice Book § 2-44 to discipline attorneys, including disbarment, for just cause.[6] A court may exercise this inherent authority to discipline attorneys in a manner that "may be summary, and without complaint or hearing" when the attorney conduct at issue occurs in the presence of the

court. Practice Book § 2-45.[7] In the present case, the court did not follow any specific procedure set out by our rules of practice or as established by case law. "[D]ue process, [however] unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances. . . . [Rather] [d]ue process is flexible and calls for such procedural protections as the particular situation demands." (Internal quotation marks omitted.) *Burton* v. *Mottolese*, supra, 267 Conn. 20. The procedure followed by Judge Moukawsher to discipline Cunha, however unprecedented, must comply with due process. See, e.g., *In the Matter of Presnick*, 19 Conn. App. 340, 349, 563 A.2d 299 (as long as there is no denial of due process, court may for good cause discipline attorneys who practice before it), cert. denied, 213 Conn. 801, 567 A.2d 833 (1989).

Notwithstanding the unprecedented procedure taken by Judge Moukawsher in this matter, in light of the totality of the circumstances, we conclude that Cunha was not unconstitutionally deprived of her opportunity to be heard prior to her disbarment. It is clear from the transcripts that Cunha had a meaningful opportunity to be heard at both hearings and to explain her claims of bias. At the hearing on the motion to disqualify, Judge Moukawsher heard Cunha describe the rulings of Judge Adelman that were unfavorable to her client, directed her away from tangential commentary and gave her ample opportunity to provide supporting evidence. Judge Moukawsher repeatedly asked Cunha to clarify her arguments regarding each claim of bias. Cunha stated that she believed "wholeheartedly" that Judge Adelman was involved in a racketeering scheme with legal professionals of the Jewish faith. In response to the racketeering claim, Judge Moukawsher gave Cunha sufficient opportunity to be heard and stated, "that's, as you know, a very serious thing to say, so give me the evidence and I'll consider it." Cunha claimed to have a list of cases that supported her racketeering claim but, when pressed, could not produce it. Judge Moukawsher reminded her, "if you're not prepared to back the thing up, don't say it because I cannot keep saying—I keep saying, well, what's the evidence and something else gets said and I have to say what's the evidence." Judge Moukawsher gave Cunha sufficient opportunity to be heard on her other claims of bias against women alleging abuse and individuals with disabilities and repeatedly asked Cunha to provide support for the claims. Despite Judge Moukawsher's frequent reminder to Cunha not to state claims she could not support, Cunha persisted in her claims of bias, stating, "I do believe that there's outright bias here without a doubt. I believe that the record reflects that." Cunha also stated that exhibit 71, admitted in the dissolution action, would demonstrate that a multidisciplinary panel concluded that the plaintiff in the dissolution proceeding sexually assaulted his children, and Judge

Moukawsher asked her multiple questions about the document, giving her the opportunity to withdraw her statements. Later in the disqualification ruling, Judge Moukawsher characterized those statements as lies.

At the beginning of the disciplinary hearing, instead of proceeding to argue her claim that Judge Moukawsher's findings in the disqualification ruling were clearly erroneous or explaining why her conduct did not violate the Rules of Professional Conduct, Cunha asserted that Judge Moukawsher was "intentionally harassing" her, that the disqualification ruling was "a joke," that he had "lied to the public," asked what was "so difficult for this court to comprehend" regarding the right to due process, and questioned whether Judge Moukawsher "would . . . like [her] to bow . . . ." She did so despite Judge Moukawsher's suggestion that she describe "why you, in good faith, believed the things that you asserted. You could name the documents you examined, you could name the people you spoke with, you could explain the reliability of these things." Rather than follow Judge Moukawsher's suggestion, Cunha continued to interrupt the court and asked whether she would have the opportunity to cross-examine Judge Moukawsher, as her accuser. The court attempted to stop her repeated interruptions and to refocus Cunha on the issues at hand before finally informing her that she should stop speaking as she was "bounding criminal contempt of court . . . ."

In the disqualification ruling, Judge Moukawsher gave Cunha notice that disciplinary counsel may participate in the disciplinary hearing by stating that "[t]he clerk will send a copy of this ruling to the chief disciplinary counsel. The court would welcome participation by any appropriate disciplinary entity to appear as a friend of the court for the upcoming hearing." At the disciplinary hearing, disciplinary counsel, further confirming that the hearing was not limited to the issue of the appropriate sanction, stated, "I believe the court can find, by clear and convincing evidence, several violations of the Rules of Professional Conduct" and argued that Judge Moukawsher should find that Cunha had committed misconduct by violating several specific Rules of Professional Conduct and should disbar her as a sanction for that misconduct. Judge Moukawsher then addressed Cunha, stating that "[a] lot of time has gone by since you last spoke. And I'm hoping that during that time period you considered whether you should make some statement that might address the substance of any action I might take against you with respect to the findings I've made, again, advising you, in the strictest terms, to address what is actually before me. I'll give you a last opportunity to do so."

Cunha then addressed whether she engaged in any misconduct. For example, she stated, "I have never, ever made a misrepresentation to a court, or anyone

else, knowingly, or intentionally, I stand by that principle." The court and Cunha then engaged in a lengthy exchange about whether her statements about the alleged sexual abuse were true. During that discussion, Judge Moukawsher stated: "It was a very specific statement about what I'd find in the [Department of Children and Families' (department)] report. And I found the opposite. So, if you'd like to address that, that's the narrow thing that we were having an extended discussion on, because I basically told you your credibility is on the line with this. I'm going to go and look at this exhibit and if it says what you say I'll credit it. If it says the opposite, then you've got something to answer for. And now, you're here to answer for it because it did say [the] opposite of what you represented to me. Now, if you'd like to address that, you may." Later, Cunha argued that Judge Moukawsher misconstrued or misunderstood her statements about the Jewish faith. She also argued that transcripts from other hearings support statements she made at the disqualification hearing.

Although Cunha was not under oath at either hearing, as an officer of the court, she had an obligation to tell the truth and to not make frivolous claims. See *Massameno* v. *Statewide Grievance Committee*, 234 Conn. 539, 554–55, 663 A.2d 317 (1995) (as officers of court, attorneys are continually accountable to court for manner in which they exercise that privilege); see also Rules of Professional Conduct 3.3 (lawyer shall not knowingly make false statement of fact to tribunal); Rules of Professional Conduct 8.4 (3) ("[i]t is professional misconduct for a lawyer to . . . [e]ngage in conduct involving dishonesty, fraud, deceit or misrepresentation").

In its disqualification ruling, Judge Moukawsher found that there was no basis for Cunha's representations before it that Judge Adelman was biased against persons not of the Jewish faith, women who allege abuse and individuals with disabilities, and that exhibit 71 made clear that neither the department nor a multidisciplinary panel concluded that the plaintiff in the dissolution action had abused his children. These representations, which Judge Moukawsher characterized in the disqualification ruling as blatant lies, and the claims of bias, which he characterized as "utterly empty claims against a judge," occurred before the court, and there was no contested factual issue as to what Cunha had said at the hearing on the motion to disqualify. See *In the Matter of Presnick*, supra, 19 Conn. App. 351 ("[t]he right to a hearing is limited to cases in which a hearing would assist the court in its decision, usually because there is a contested factual issue to be resolved"). Although it is true that Judge Moukawsher reminded Cunha at the start of the disciplinary hearing that the purpose of that hearing was to give her a chance to be heard on the issue of whether he should act upon the findings he had made as to her conduct at the disqualifi-

cation hearing, he allowed her the opportunity to challenge those findings and to explain why there was a good faith basis for her conduct *before* determining that she had violated several of the Rules of Professional Conduct. Accordingly, we reject this claim.

For the foregoing reasons, we conclude that Cunha cannot prevail on her due process claims that, regarding the disciplinary hearing, Judge Moukawsher failed to give her adequate notice and improperly limited that hearing to the issue of sanctions. We find no such violations of due process.

II

Cunha next claims that the sanction of disbarment for her conduct made in connection with the motion to disqualify constituted impermissible punishment for her exercise of her first amendment right to free speech. Our established law leads us to conclude otherwise.

"The [f]irst [a]mendment, applicable to the [s]tates through the [due process clause of the] [f]ourteenth [a]mendment, provides that Congress shall make no law . . . abridging the freedom of speech. The hallmark of the protection of free speech is to allow free trade in ideas—even ideas that the overwhelming majority of people might find distasteful or discomforting. . . . Thus, the [f]irst [a]mendment ordinarily denies [the government] the power to prohibit dissemination of social, economic and political doctrine [that] a vast majority of its citizens believes to be false and fraught with evil consequence. . . . The [f]irst [a]mendment affords protection to symbolic or expressive conduct as well as to actual speech. . . . The protections afforded by the [f]irst [a]mendment, however, are not absolute, and we have long recognized that the government may regulate certain categories of expression consistent with the [c]onstitution." (Internal quotation marks omitted.) *Lafferty* v. *Jones*, 336 Conn. 332, 351–52, 246 A.3d 429 (2020), cert. denied,     U.S.    , 141 S. Ct. 2467, 209 L. Ed. 2d 529 (2021). "Whether the trial court's sanctions constitute an impermissible restriction on the [plaintiff's] speech presents a question of law, over which our review is plenary. . . . [A]n appellate court is compelled to examine for [itself] the . . . statements [at] issue and the circumstances under which they [were] made to [determine] whether . . . they . . . are of a character [that] the principles of the [f]irst [a]mendment . . . protect." (Internal quotation marks omitted.) Id., 352.

Cunha argues that her "speech should not have been subject to discipline as it did not pose an imminent and likely threat to the administration of judicial proceedings." Her argument is misplaced. That standard only applies to extrajudicial speech by a party to litigation; the speech at issue in the present case was made in the presence of the court by an attorney. See id., 359.

Thus, the question of whether the content of Cunha's arguments subjected her to discipline is answered by the Rules of Professional Conduct. Judge Moukawsher's conclusion that Cunha violated the Rules of Professional Conduct primarily was based on the finding that Cunha had lied and made misrepresentations during the hearing on the motion to disqualify. Cunha does not claim that those lies and misrepresentations constituted protected speech, nor does she specifically claim that any one of Judge Moukawsher's seven findings of violations of the Rules of Professional Conduct constituted a violation of her right to free speech.[8] Rather, she contends that the "court reasoned that lies and misrepresentations are not protected speech in the courtroom. It is certainly not being argued here that they should be. What is being argued is that the constitutional guarantees of free speech require greater consideration in sanctioning attorney conduct than were provided by the trial court." She argues that Judge Moukawsher should have permitted her "to refute [the] findings of misconduct. That is doubly important considering that the conduct at issue was speech. Such a lack of consideration could sanction or otherwise chill what may be controversial but meritorious arguments." Cunha also argues that Judge Moukawsher "did not narrowly tailor [his] sanctions in consideration of the conduct being attorney speech. The trial court could have imposed a fine, reprimand or suspension or made a referral to the grievance committee. Instead, it chose the most severe penalty to an attorney. It disbarred Ms. Cunha from the practice of law. It did so without regard to the potential chilling effects on advocacy that a swift disbarment for an argument could have on the legal profession." What we glean from this argument as stated is that Judge Moukawsher violated Cunha's right to free speech by (1) sanctioning her for misconduct without first conducting a hearing regarding whether misconduct had occurred and (2) not giving her a less severe sanction because of free speech concerns.

Neither of these arguments merit extensive discussion. We have addressed the first argument in our analysis of Cunha's due process claim in part I B of this opinion in which we concluded that she was afforded a sufficient opportunity to be heard. As to the second argument, Cunha has directed us to no law, nor are we aware of any, providing either that she is entitled to additional process because her misconduct involved speech or that a different standard than that described in part IV of this opinion for the imposition of sanctions for attorney misconduct should apply when the misconduct involves speech. For the foregoing reasons, Cunha cannot prevail on the arguments she presents to this court implicating the first amendment.

### III

Cunha next claims that Judge Moukawsher's findings

that she had violated the Rules of Professional Conduct were not factually supported by clear and convincing evidence. We disagree as the record contains sufficient evidence to support the decision under the requisite standard of proof.

We begin with the applicable standard of review. "[W]here the factual basis of the court's decision is challenged we must determine whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous. . . . We also must determine whether those facts correctly found are, as a matter of law, sufficient to support the judgment. . . . Although we give great deference to the findings of the trial court because of its function to weigh and interpret the evidence before it and to pass upon the credibility of witnesses . . . we will not uphold a factual determination if we are left with the definite and firm conviction that a mistake has been made. . . . Additionally, because the applicable standard of proof for determining whether an attorney has violated the Rules of Professional Conduct is clear and convincing evidence . . . we must consider whether the trial court's decision was based on clear and convincing evidence." (Citations omitted; internal quotation marks omitted.) *Burton* v. *Mottolese*, supra, 267 Conn. 37–38.

Judge Moukawsher reasoned that Cunha had violated rules 3.1, 3.3 and 8.4 (3) of the Rules of Professional Conduct because she "intentionally and persistently misrepresented the facts to the court" in order "to continue to pursue a false narrative about sexual abuse conclusions . . . ." See Rules of Professional Conduct 3.1 (lawyer shall not assert issue unless there exists basis in law and fact that is not frivolous); Rules of Professional Conduct 3.3 (lawyer shall not knowingly make false statement of law or fact to tribunal); Rules of Professional Conduct 8.4 (3) (it is professional misconduct for lawyer to engage in conduct involving dishonesty, fraud, deceit or misrepresentation).

Judge Moukawsher stated that Cunha also claimed at the disqualification hearing that department records contained in exhibit 71 would reveal abuse by the plaintiff of his children, despite the fact that exhibit 71 reveals that the department stated that he did not pose any risk to the health, safety or well-being of the children.[9] Cunha's argument that Judge Moukawsher's findings were not supported in the record by clear and convincing evidence because her inaccurate representations were not made intentionally but rather were a result of poorly constructed arguments is belied by the transcript of the hearing on the motion to disqualify during which Judge Moukawsher admonished Cunha not to say things for which she could not provide support and gave her opportunities to withdraw or temper

her statements.[10] On the basis of our review of the record, we conclude that Judge Moukawsher's findings that Cunha's allegations made in connection with the motion to disqualify were frivolous and intentionally inaccurate were supported by clear and convincing evidence.

Concerning rule 3.2 of the Rules of Professional Conduct, which provides that a lawyer shall make reasonable efforts to expedite litigation consistent with the interests of the client, Judge Moukawsher found that Cunha's "attack on Judge Adelman" and misrepresentations regarding exhibit 71 were "part of a tactic of stalling and diverting" the case. Cunha contends that there was no clear and convincing evidence that she made her filings to delay the case rather than in zealous strategic representation of her client. To the contrary, instances cited in the disciplinary order, and apparent in the court file, provide clear and convincing evidence that Cunha had failed to make reasonable efforts to expedite litigation consistent with the interests of her own client.

Regarding rule 8.2 of the Rules of Professional Conduct, which prohibits lawyers from making a statement concerning the integrity of a judge that either the lawyer knows to be false or makes with reckless disregard as to its truth or falsity, Cunha argues that there was not clear and convincing evidence that she knowingly lied during court proceedings instead of "just making a poor, unprepared argument." Even if we were to assume, without deciding, that there was not clear and convincing evidence that Cunha had made the statements intentionally, Judge Moukawsher also found that Cunha's arguments in furtherance of her allegations of judicial bias had the corrupt motive "to cloud the truth for the perceived benefit of her client," or in other words, she acted with reckless disregard for the truth. Cunha makes no argument that the record fails to establish that she acted with reckless disregard. See Rules of Professional Conduct § 8.2 (a) ("[a] lawyer shall not make a statement that the lawyer knows to be false or with reckless disregard as to its truth or falsity concerning the qualifications or integrity of a judge, adjudicatory officer or public legal officer, or of a candidate for election or appointment to judicial or legal office").

Concerning rule 3.5 of the Rules of Professional Conduct, which prohibits lawyers from engaging in conduct intended to disrupt a tribunal, Cunha argues that the record demonstrates that she argued aggressively but does not show that she used profane language or interrupted the court proceedings. The broad language of the rule prohibits "conduct intended to disrupt a tribunal" and does not limit such conduct either to the use of profanity or to the interruption of proceedings. Rules of Professional Conduct § 3.5 (4). The transcript from the hearing on the motion to disqualify supports the

findings that Cunha disrupted proceedings and prejudiced the system of justice by "hurling baseless accusations," harassing parties, and using the system of justice to punish a party opponent and legal professionals. Judge Moukawsher's findings are rooted in (1) the nature of Cunha's claims of bias against Judge Adelman, which required a referral to Judge Moukawsher, and (2) her arguments during the hearing on the motion to disqualify, which included unsupported claims of racketeering between Judge Adelman and legal professionals and factually incorrect claims that exhibit 71 would show certain inappropriate behavior on the part of the plaintiff in the dissolution action. The record provides clear and convincing evidence that Cunha had disrupted the dissolution proceedings by her arguments concerning the motion to disqualify.

Regarding rule 8.4 (4) of the Rules of Professional Conduct, which provides that it is professional misconduct for a lawyer to engage in conduct that is prejudicial to the administration of justice, Judge Moukawsher used the same reasoning as he used for finding a violation of rule 3.5 of the Rules of Professional Conduct and stated that Cunha disrupted proceedings and prejudiced the system of justice by using the judicial system to punish a party opponent and legal professionals. Cunha argues that she filed her motions in zealous and strategic advocacy of her client and not to stall the dissolution proceedings. Although this argument does not directly address the basis for the finding of a violation of rule 8.4 (4), as with rule 3.5, there is clear and convincing evidence in the record of the hearing on the motion to disqualify that she prejudiced the system of justice by using it to punish a party opponent and legal professionals.

For the foregoing reasons, we conclude that the court's findings of violations of the Rules of Professional Conduct were supported by clear and convincing evidence.

IV

Cunha last claims that disbarment was an excessive penalty because it was disproportionate in light of the conduct involved and her lack of disciplinary history. We are not persuaded.

Practice Book § 2-44 provides in relevant part that "[t]he Superior Court may, for just cause . . . disbar attorneys . . . ." If a court in the exercise of its discretion disciplines an attorney, "it does so not to mete out punishment to an offender, but [so] that the administration of justice may be safeguarded and the courts and the public protected from the misconduct or unfitness of those who are licensed to perform the important functions of the legal profession. . . . The trial court has inherent judicial power, derived from judicial responsibility for the administration of justice, to exercise sound discretion to determine what sanction to

impose in light of the entire record before it. . . .

"The American Bar Association has promulgated standards for the imposition of sanctions. . . . [A]fter a finding of misconduct, a court should consider: (1) the nature of the duty violated; (2) the attorney's mental state; (3) the potential or actual injury stemming from the attorney's misconduct; and (4) the existence of aggravating or mitigation factors. . . . The aggravating factors referenced in the standards include (a) prior disciplinary offenses; (b) dishonest or selfish motive; (c) a pattern of misconduct; (d) multiple offenses; (e) bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency; (f) submission of false evidence, false statements, or other deceptive practices during the disciplinary process; (g) refusal to acknowledge wrongful nature of conduct; (h) vulnerability of victim; (i) substantial experience in the practice of law; [and] (j) indifference to making restitution. . . . The mitigation factors include: (a) absence of a prior disciplinary record; (b) absence of a dishonest or selfish motive; (c) personal or emotional problems; (d) timely good faith effort to make restitution or to rectify consequences of misconduct; (e) full and free disclosure to disciplinary board or cooperative attitude toward proceedings; (f) inexperience in the practice of law; (g) character or reputation; (h) physical or mental disability or impairment; (i) delay in disciplinary proceedings; (j) interim rehabilitation; (k) imposition of other penalties or sanctions; (*l*) remorse; [and] (m) remoteness of prior offenses." (Citations omitted; internal quotation marks omitted). *Chief Disciplinary Counsel* v. *Rozbicki*, 150 Conn. App. 472, 487–88, 91 A.3d 932, cert. denied, 314 Conn. 931, 102 A.3d 83 (2014).

The disciplinary order states that "[d]isbarment is the appropriate penalty for conduct as egregious as [Cunha's]." It further states that there were aggravating factors, including that Cunha "has been disrupting this case for a long time with bogus motions, duplicate proceedings, baseless attacks on the lawyers and judges and experts. She didn't just lose her temper one day and do things she has regretted. She has systematically tried to use the justice system against itself" in order to frustrate and discredit it. (Footnote omitted.) Judge Moukawsher additionally noted that, during the disciplinary hearing, Cunha, an experienced lawyer, "berated the court, mocked it, and mocked the proceedings." Judge Moukawsher noted that "[t]hings might be different if there were substantial mitigating factors here. But there aren't. There is only [that Cunha] has not been disciplined before, but that is by no means enough to offset the seriousness of her wrongdoing."

In support of her position that Judge Moukawsher abused his discretion in imposing the sanction of disbarment for her misconduct, Cunha highlights other cases

that she alleges involve "similar cases of misconduct" wherein a lesser penalty was imposed. Cunha, however, has not demonstrated that Judge Moukawsher acted arbitrarily in imposing the penalty of disbarment. Rather, the disciplinary order demonstrates a careful consideration of the nature of the misconduct in light of aggravating and mitigating circumstances. Accordingly, we defer to Judge Moukawsher's determination of the appropriate sanction.[11] See *Disciplinary Counsel* v. *Serafinowicz*, 160 Conn. App. 92, 102, 123 A.3d 1279, cert. denied, 319 Conn. 953, 125 A.3d 531 (2015). On the basis of our review of the record, we cannot conclude that Judge Moukawsher's sanction of disbarment was an abuse of his discretion.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] Cunha also claims for the first time in her appellate reply brief that, following Judge Moukawsher's order disbarring her, he continued to enter further orders that constitute "ex post facto orders and directly violate the guaranteed protections of due process." We decline to review this claim because Cunha raised it for the first time on appeal in her appellate reply brief. See *State* v. *Griffin*, 217 Conn. App. 358, 375 n.9, 288 A.3d 653 ("it is well established that we do not entertain arguments raised for the first time in a reply brief"), cert. denied, 346 Conn. 917, 290 A.3d 799 (2023).

[2] Although counsel filed the writ of error and Cunha's principal brief, Cunha subsequently filed her own appearance, personally filed her reply brief, and personally argued her claims to this court.

[3] Cunha claims a violation of her federal and state rights to due process. We confine our analysis of Cunha's claim to the federal constitution because she did not provide an independent analysis of her claim under the state constitution in accordance with *State* v. *Geisler*, 222 Conn. 672, 684–86, 610 A.2d 1225 (1992). See id. (defendant must provide independent analysis under particular provision of state constitution).

[4] We do not suggest that this is a requirement for due process. See *Briggs* v. *McWeeny*, supra, 260 Conn. 319–20 (in order for notice of hearing on attorney misconduct to satisfy due process standards it must apprise attorney of transactions that form basis of allegations of misconduct and need not refer to specific sections of Code of Professional Responsibility); see also id., 319 n.16 (Code of Professional Responsibility was repealed on October 1, 1986, at the same time that the current Rules of Professional Conduct, as approved by the judges of the Superior Court, became effective).

[5] Cunha also argues that because the disciplinary order stated that she had "a tactic of stalling and diverting [the underlying dissolution] case," the notice violated her right of due process because it was limited to speech and conduct before Judge Moukawsher. The record does not support this argument. In fact, Cunha was on notice that her conduct in delaying the dissolution proceedings would be addressed in the disciplinary hearing because such conduct had been included in the disqualification ruling, which served as the notice for the January 10, 2022 hearing. Specifically, in the disqualification ruling, Judge Moukawsher stated that Cunha had "clogged the docket, delayed the trial, and cost the parties a fortune by repeatedly hurling baseless personal accusations against lawyers, judges, the guardian [ad litem], and many others. Rather than get the case tried and appeal if she doesn't like the result, Attorney Cunha has made every problem in the case worse. Indeed, her behavior has become the biggest problem in the case."

[6] Practice Book § 2-44 provides: "The Superior Court may, for just cause, suspend or disbar attorneys and may, for just cause, punish or restrain any person engaged in the unauthorized practice of law."

[7] Practice Book § 2-45 provides: "If such cause occurs in the actual presence of the court, the order may be summary, and without complaint or hearing; but a record shall be made of such order, reciting the ground thereof. Without limiting the inherent powers of the court, if attorney misconduct occurs in the actual presence of the court, the Statewide Grievance Committee and the grievance panels shall defer to the court if the court

chooses to exercise its jurisdiction."

[8] Judge Moukawsher found Cunha had violated rule 3.1 of the Rules of Professional Conduct (lawyer shall not assert frivolous claims), rule 3.2 of the Rules of Professional Conduct (lawyer shall make reasonable efforts to expedite litigation), rule 3.3 of the Rules of Professional Conduct (lawyer shall not knowingly make false statement of law or fact to tribunal), rule 3.5 of the Rules of Professional Conduct (lawyer is prohibited from engaging in conduct intended to disrupt tribunal), rule 8.2 of the Rules of Professional Conduct (lawyer shall not knowingly or with reckless disregard make statement concerning integrity of judge), rule 8.4 (3) of the Rules of Professional Conduct (lawyer shall not engage in dishonesty, fraud, deceit or misrepresentation) and rule 8.4 (4) of the Rules of Professional Conduct (lawyer shall not engage in conduct that is prejudicial to administration of justice).

[9] Cunha does not contest on appeal Judge Moukawsher's finding that exhibit 71 did not demonstrate what she had claimed it did.

[10] For example, at the hearing on the motion to disqualify the following colloquy occurred:

"[Attorney Cunha]: But they are complaining of sexual assault. It has been established that the complaints have been substantiated by a multidisciplinary taskforce team who—who recommended those children not be with their father. And, because of the lies presented to the court by the guardian ad litem and Attorney Aldrich manipulating the facts, Judge Adelman has ignored the real evidence. And—

* * *

"The Court: [I]f I look at that [department] document, within that document there are the conclusions of a multidisciplinary taskforce that Christopher Ambrose has sexually assaulted his children repeatedly and that—and that the taskforce recommends that he—that they be taken away from him. Is that what—

"[Attorney Cunha]: Yes. Yes. And you will also find that the legal department for [the department] recommends that [the department] file a take into custody matter with the juvenile court.

* * *

"The Court: —the [department]—the [department] report—

"[Attorney Cunha]: Yes.

"The Court: —will quote this taskforce saying that—that the father committed sexual assault against the children and should be—and they shouldn't be allowed with him. That's what I'll find in there; right?

"[Attorney Cunha]: Yes. Absolutely."

* * *

"[Attorney Cunha]: It's exhibit number 71.

"The Court: 71. Okay. I'll look at that. And you want me to conclude from that that was a matter you brought to the court's attention, that it has a clear conclusion, essentially, that the children are in immediate danger—

"[Attorney Cunha]: Yes."

[11] The defendants in error argue, citing footnote 51 in *Burton* v. *Mottolese*, supra, 267 Conn. 57, that this court may note postdisbarment events to illustrate the correctness of the court's disciplinary order. We do not read the footnote in *Burton* so broadly, and, under the circumstances of this case, we decline to consider Cunha's postdisbarment conduct.